IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| FERNANDO HERNANDEZ and <br> IRENE G. HERNANDEZ, <br> <br> *Plaintiffs*, <br> <br> v. <br> <br> BANK OF AMERICA AS SUCCESSOR <br> BY MERGER TO BAC HOME LOANS, <br> <br> *Defendant*. | § <br> § <br> § <br> § <br> § Civil Action No. SA-12-CV-005-XR <br> § <br> § <br> § <br> § <br> § <br> § |

**ORDER**

On this day the Court considered Defendant's motion for summary judgment (Doc. No. 19). For the following reasons, the Court GRANTS the motion.

**I. Background**

**A. Factual Background**

In September of 2002, Plaintiffs Fernando Hernandez and Irene Hernandez refinanced the mortgage on their home located at 2 Rossridge, San Antonio, Texas. Plaintiffs obtained a mortgage loan from Compass Bank for $271,000 (the "Mortgage Loan"). Compass Bank subsequently assigned the Mortgage Loan to Countrywide Home Loans, Inc. ("Countrywide"). In 2005, a dispute arose between Plaintiffs and Countrywide concerning the amount of monthly payment that was required and both Plaintiffs and Countrywide filed lawsuits against one another in state court.[1] Both lawsuits were ultimately resolved and Plaintiffs and Countrywide

---

[1] Plaintiffs allege that in September of 2002 they entered into an "Escrow Waiver" agreement with Compass Bank "whereby Compass Bank amended the terms of the Deed of Trust and waived the escrow requirements." Orig. Pet. ¶ 7. Despite the Escrow Waiver, Plaintiffs allege that Countrywide, after acquiring the Mortgage Loan, still insisted that Plaintiffs escrow payments for tax and insurance.

1

entered into a Confidential Compromise Settlement Agreement and Mutual Release (the "Settlement Agreement").[2] Defendant Bank of America, N.A., as successor by merger to BAC Home Loans Servicing, L.P. ("Defendant") thereafter acquired the Mortgage Loan. Plaintiffs allege that although they made all required monthly payments, and despite the Settlement Agreement with Countrywide, Defendant declared the loan in default and scheduled a foreclosure sale of the property for December 6, 2011.

**B. Procedural Background**

Plaintiffs filed this lawsuit in the 285th Judicial District Court of Bexar County, Texas on December 5, 2011 to enjoin the foreclosure sale of the property. The state court issued a temporary restraining order enjoining the sale. Defendant timely removed the action to this Court based on diversity.

Plaintiffs' original state court petition, which remains the live pleading, alleges causes of action for breach of contract, violation of the Texas Deceptive Trade Practices Act, fraud, and breach of the duty of good faith and fair dealing. Plaintiffs seek attorneys' fees and injunctive relief enjoining Defendant from foreclosing on the property.

Defendant filed a motion to dismiss the original petition. The Court granted the motion in part and dismissed Plaintiffs' claims for violation of the Texas Deceptive Trade Practices Act and for breach of the duty of good faith and fair dealing. The Court also found that Plaintiffs failed to plead their fraud claim with sufficient particularly to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b) and therefore dismissed Plaintiffs' fraud claim with leave to amend. The Court denied the motion to dismiss with respect to Plaintiffs' breach of contract claim.

---

[2] Among other provisions, the Settlement Agreement provided that Countrywide would modify the Note "as set forth" by the terms of an attached Loan Modification Agreement.

Plaintiffs have not filed an amended complaint. Accordingly, the only claim that remains pending is Plaintiffs' breach of contract claim.[3]

**C. Defendant's Motion for Summary Judgment**

Defendant contends that it is entitled to summary judgment on Plaintiffs' breach of contract claim because "a party to a contract who is in default cannot maintain a suit for breach of contract."[4] Defendant contends that Plaintiffs defaulted on their contractual obligation under the Settlement Agreement to timely pay their property taxes. Defendant also contends that Plaintiffs defaulted on their contractual obligation under the Mortgage Loan because the Mortgage Loan has been delinquent since February of 2011. In support of its motion for summary judgment, Defendant attached a declaration of Donlita Cloud, Assistant Vice President Operations Team Lead for Bank of America; a copy of the Deed of Trust; a copy of an assignment of the Deed of Trust; a copy of the Settlement Agreement; an "Escrow Notice" that Defendant sent to Plaintiffs in September of 2010 informing them that there were delinquent property taxes owed on the property; and a "Tax Payment Notice" that Defendant sent to Plaintiffs in November of 2010 informing them that Defendant had learned that there were delinquencies associated with the property, had advanced funds to pay the delinquencies owing, had established an escrow account for the loan to ensure the timely payment of future taxes, and would increase the monthly mortgage payment to fund the escrow account.

Plaintiffs filed a response to the motion for summary judgment contending that there is a fact issue as to whether they complied with their contractual obligations under the Settlement Agreement and the Mortgage Loan. In support of their response, Plaintiffs attached an affidavit

---

[3] Even if Plaintiffs' fraud claim were still pending, Plaintiffs expressly indicate that they do not oppose summary judgment on the fraud claim. *See* Response ¶ 27.
[4] Mot. Summ. J. ¶ 18.

of Plaintiff Fernando Hernandez; copies of correspondence, returned checks, and notices that Plaintiffs received from Defendant between July of 2011 and March of 2012; a copy of a letter that Plaintiffs' counsel sent to Defendant in October of 2011 advising Defendant that Plaintiffs disputed the amount of debt owed; an "Escrow Account Review" form that was prepared by Defendant in October of 2012; and a copy of the Bexar County Tax Assessor-Collector's records showing the payment history of the property.

Defendant has not filed a reply.

## II. Legal Standard

Summary judgment is proper when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails . . . to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Curtis v. Anthony*, 710 F.3d 587, 594 (5th Cir. 2013) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The court must draw reasonable inferences and construe evidence in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Although the evidence is viewed in the light most favorable to the nonmoving party, a nonmovant may not rely on "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence" to create a genuine issue of material fact sufficient to survive summary judgment. *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004).

### III. Discussion

#### A. Legal Requirements for Establishing a Breach of Contract Cause of Action

"A party claiming breach of contract has the burden to prove the elements of that cause of action, which include (1) the existence of a valid contract between the plaintiff and defendant, (2) the plaintiff performed, (3) the defendant breached the contract, and (4) the plaintiff was damaged as a result of the breach." *Calce v. Dorado Exploration, Inc.*, 309 S.W.3d 719, 733-34 (Tex. App.—Dallas 2010, no pet.). "It is a well established rule that a party to a contract who is himself in default cannot maintain a suit for its breach." *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990) (per curiam) (internal quotation marks omitted).

#### B. Analysis

Although somewhat unclear, Plaintiffs' breach of contract claim appears to be based on the allegation that Defendant 1) breached the terms of the Settlement Agreement, and 2) breached the terms of the Mortgage Loan, as modified by the Escrow Waiver and the Loan Modification Agreement. Defendant contends that it is entitled to summary judgment because Plaintiffs defaulted under both contracts. The Court will consider Plaintiffs' claims for breach of the Settlement Agreement and breach of the Mortgage Loan in turn.

##### 1. Breach of the Settlement Agreement

Defendant contends that Plaintiffs defaulted on their contractual obligation under the Settlement Agreement to timely pay their property taxes. Plaintiffs argue that there is a fact issue as to whether they defaulted under the terms of the Settlement Agreement.

It is undisputed that Plaintiffs and Countrywide entered into a binding Settlement Agreement in June of 2009. Defendant does not dispute that the Settlement Agreement is still applicable. The record contains a copy of the Settlement Agreement, which provides in part:

> Once Borrowers [*i.e.*, Plaintiffs in this case] have executed this Agreement and the Loan Modification Agreement has become effective, Borrowers shall be responsible for paying the real property taxes on the Property and maintaining continuous hazard insurance coverage on the Property. Borrowers shall not be required to make escrow payments, provided that they comply with the terms of the Loan Documents [*i.e.*, the Note, Deed of Trust and associated origination documents that constitute the Mortgage Loan in this case] and Loan Modification Agreement and further provided that they timely submit to the holder of the Note and/or its agent written proof of payment in full of all Escrow Items as that term is defined in the Deed of Trust.[5] In the event that Borrowers fail to comply with the terms of this Paragraph, the holder of the Note and/or its agent expressly retain all their rights and remedies specified in the Loan Documents, including without limitation, the right to establish a force-placed escrow account.[6]

Evidence in the record shows that Plaintiffs did not comply with the Settlement Agreement because they did not timely pay their property taxes. Specifically, there is evidence that on September 1, 2010 Defendant sent Plaintiffs a notice informing them that there were delinquent property taxes owed on the property.[7] There is also evidence that Defendant sent Plaintiffs another notice on November 4, 2010 informing them that Defendant had learned that there were delinquencies associated with the property and that, as a result, Defendant had advanced funds "to pay the delinquencies owing, including any penalties, interest, other fees, and if available, any property taxes due within 45 days, in order to protect its interest in the property."[8] There is no evidence demonstrating that either of these notices was inaccurate.

---

[5] The Deed of Trust defines "Escrow Items" to include, among other items, taxes and insurance premiums.
[6] Settlement Agreement ¶ 3(e).
[7] Mot. Summ. J., Ex. A-4. The notice also informed Plaintiffs that if they did not pay the property taxes within thirty days, Defendant might pay the delinquent taxes and establish an escrow account that would remain in effect thereafter to ensure the timely payment of future taxes.
[8] Mot. Summ. J., Ex. A-5.

In their response, Plaintiffs point to the fact that the Bexar County Tax Assessor-Collector's records show that Plaintiffs made a payment of $4,535.23 on October 29, 2010, several days before Defendant made a payment of $4,610.81 on November 8, 2010. The Court also notes that the Tax Assessor-Collector's records show that Plaintiffs previously made several other payments in 2009 and 2010.[9] However, for at least two reasons, the Tax Assessor-Collector's records are insufficient to support a finding that Plaintiffs complied with the Settlement Agreement by timely paying their property taxes. First, there is no evidence establishing that Plaintiffs' payment of $4,535.23, either by itself or in conjunction with Plaintiffs' other payments, constituted full payment of the property taxes that were due. Second, there is no evidence establishing that the full tax payment was timely made. Plaintiffs have not pointed to, and the Court is not aware of, any competent summary judgment evidence in the record demonstrating that their payments as reflected in the Tax Assessor-Collector's records constituted full and timely payment of the taxes that were due.[10]

In his affidavit, Plaintiff Fernando Hernandez does state that "Plaintiffs have been making their monthly mortgage payments as required by the loan and making their obligations towards insurance and property taxes."[11] He also states that "Plaintiffs have taken advantage of the split-payment option provided by the Bexar County Taxes [sic] Assessor-Collector for payment of Property Taxes."[12] However, these statements are conclusory and therefore cannot support a finding that Plaintiffs timely made their property tax payments in full.

---

[9] In 2009, the Tax Assessor-Collector's records show that Plaintiffs made a payment of $4,125.46. In 2010, the Tax Assessor-Collector's records show that, before making their payment of $4,535.23, Plaintiffs also made payments of $1,340 and $37.78.

[10] Moreover, there is no evidence showing that Plaintiffs timely provided written proof to Defendant that the taxes were paid in full, as the Settlement Agreement required.

[11] Aff. of Fernando Hernandez ¶ 9.

[12] *Id.*

7

Plaintiffs also contend that "the statements in the Declarations [sic] of Donlita Cloud are not accurate and at best incomplete."[13] However, even if Plaintiffs' contention were true, it would not change the result in this case because the record would still be devoid of sufficient evidence to support a finding that Plaintiffs timely paid their property taxes in full.

Accordingly, because there is insufficient evidence in the record to support a finding that Plaintiffs complied with the Settlement Agreement by timely paying their property taxes in full, Plaintiffs have failed to establish that they tendered performance under the Settlement Agreement. Defendant is therefore entitled to summary judgment on Plaintiffs' cause of action for breach of the Settlement Agreement.

### 2. Breach of the Mortgage Loan

Defendant argues that Plaintiffs defaulted under the Mortgage Loan because the Mortgage Loan has been delinquent since February of 2011. Plaintiffs argue that there is an issue of fact as to whether they complied with the terms of the Mortgage Loan and, more specifically, argue that there is a fact issue as to whether they have satisfied their obligations under the Mortgage Loan with regard to property taxes.

Plaintiffs contend that Defendant has not provided the Court with "copies of the Escrow Waiver Agreement or the Loan Modification Agreement in order to determine Plaintiffs' obligations in regards [sic] to payment of property taxes."[14] Plaintiffs therefore contend that Defendant "has failed to meet its burden to establish that Plaintiffs were in breach of the Loan Documents, the Settlement Agreement, and/or the Loan Modification Agreement."[15] However, Plaintiffs have misplaced the burden of proof. As the party asserting the breach of contract cause

---

[13] Response ¶ 26.
[14] *Id.* Plaintiffs do not assert, however, that they could not have presented the Escrow Waiver or Loan Modification Agreement themselves.
[15] *Id.*

8

of action in this Court, *Plaintiffs* have the burden of establishing that the elements of their claim are satisfied. Accordingly, the absence of the Escrow Waiver and the Loan Modification Agreement from the record is fatal to Plaintiffs' claim. As Plaintiffs acknowledge, without the Escrow Waiver and the Loan Modification Agreement, Plaintiffs' payment obligations cannot be determined. Thus, it cannot be found that Plaintiffs satisfied their payment obligations under the Mortgage Loan.

While Plaintiffs do produce some evidence in support of their claim, the evidence, as the Court will explain, is insufficient to create a fact issue as to whether they complied with their obligations under the terms of the Mortgage Loan.

Plaintiffs have produced evidence demonstrating that they tendered payments of $2,022.96 several times after February of 2011.[16] Defendant concedes that Plaintiffs' monthly payment would have been $2,022.96 if they had timely paid their property taxes.[17] Nonetheless, there is no evidence in the record to establish that these payments were sufficient to satisfy Plaintiffs' obligations under the terms of the Mortgage Loan. Indeed, because the Note, Escrow Waiver, and Loan Modification Agreement are not in the record, it is unknown what would constitute performance under the Mortgage Loan and, consequently, it cannot be found that Plaintiffs fully satisfied their obligations. To the extent that Plaintiffs' obligations under the Mortgage Loan can be determined by the Settlement Agreement and the Deed of Trust, Plaintiffs

---

[16] Specifically, evidence shows that $2,022.96 was credited to Plaintiffs' account in August of 2011 and in September of 2011. In both instances Defendant returned the funds because Defendant contended that they were partial payments. Evidence also shows that Plaintiffs wrote checks to Defendant for $2,022.96 on October 12, 2011 and on November 11, 2011. Both checks were returned because Defendant contended that the amounts did not reflect the total amount due to cure the default and because the funds were not sent via "Certified Funds." Evidence also shows that $4,045.92 was credited to Plaintiffs' account in March of 2012 but that Defendant returned the funds as partial payment.

[17] *See* Decl. of Donlita Cloud ¶ 8. In her declaration, Donlita Cloud states that Plaintiffs' monthly payment increased from $2,022.96 to $3,981.46 because Plaintiffs failed to timely pay their taxes as required by the Settlement Agreement. She explains that the monthly payment increased because Defendant advanced funds to pay Plaintiffs' 2009 property taxes in November of 2010 and, as a result, Plaintiffs were required to repay the advanced funds in addition to an amount as escrow to cover future property taxes.

have failed to demonstrate that they satisfied their obligations because, as described above, there is not sufficient evidence in the record to support a finding that Plaintiffs timely paid their property taxes in full.

Plaintiffs also produced a copy of an "Escrow Account Review" statement that was prepared by Defendant on October 23, 2012. Plaintiffs contend that the Escrow Account Review shows that "there was an escrow overage."[18] However, Plaintiffs do not suggest how the Escrow Account Review statement or the reflected "escrow overage" could avail their cause of action, and the Court is not aware of any way either.[19]

Thus, because the record does not support a finding that Plaintiffs satisfied their obligations under the terms of the Mortgage Loan, Plaintiffs have failed to establish that they tendered performance under the Mortgage Loan. Defendant is therefore entitled to summary judgment on Plaintiffs' cause of action for breach of the Mortgage Loan.

### IV. Conclusion

In light of the foregoing analysis, Defendant's motion for summary judgment (Doc. No. 19) is GRANTED. No claims remain pending in this case.

The Clerk is directed to enter judgment that Plaintiffs take nothing. Defendant is awarded its costs of court and must file a Bill of Costs in the form required by the Clerk of Court within fourteen days of the judgment.

It is so ORDERED.

---

[18] Response ¶ 22.
[19] Although Plaintiffs are correct that the Escrow Account Review projected an overage in the escrow account for the upcoming fiscal year, the projected overage does not indicate that Plaintiffs satisfied their payment obligations under the Mortgage Loan. Indeed, to the contrary, the Escrow Account Review expressly states that the mortgage payments were delinquent. The Escrow Account Review could also be consistent with a finding that Plaintiffs did not comply with their obligations under the Mortgage Loan in the prior year because the Escrow Account Review shows that the beginning balance of the escrow account in the prior year was negative $6,763.19.

SIGNED this 29th day of April, 2013.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE